Mr. Aerosmith, Mr. Martinez-Sauter, you both are splitting your time, I understand, correct? Yes, ma'am. Okay, so we'll just set your clocks for 10 minutes each and you'll watch your time, and then whatever you have remaining will be your rebuttal time separately. Okay, great. You may begin when you're ready, Mr. Aerosmith. Thank you, Your Honor. Good morning. May it please the Court. Nathan Aerosmith on behalf of the Defendant Appellant Deborah Johnston. I'm going to try to save about three minutes for rebuttal, I'll keep an eye on the time. So the parties in this case have spilled a lot of ink. I'm going to try to reframe the issues and try to provide the Court a path to resolving the case. It's important to remember that the Director is a defendant in this case because she is the state registrar of vital records. That's a ministerial role, the statutory scheme reflects that. The Director's role is to issue and maintain vital records like birth certificates and death certificates and to promulgate rules for that purpose. When it comes to birth certificates, the Director isn't a fact finder. She takes information reported to her by hospitals, medical professionals, and she creates a record of an individual's birth. The legislature has recognized that sometimes people need to change information that's on their birth certificate, and it's provided for some of those changes in statute and authorized the Director to promulgate rules. So let's cut right to the issue that I think is the subject of our focus order and I'm certainly interested in. I understand that subsections one through three are really ones that require no fact finding by the Director, just receives the documents and changes the birth certificate. And then we have this other category, four, that says when a Court orders it. And what would be useful to me is to know the Director's position on whether or not a member of the plaintiff class could seek change of the birth certificate under sub four. And if so, what standards govern that application? Yes, Your Honor, it is the Director's position that members of the plaintiff class can seek a Court order to amend the sex marker on their birth certificate. So is that Court order just completely up to the discretion of a Superior Court judge or is there some standard by which the judge would have to judge that application? So I would concede there isn't anything in the statute that gives the Superior Court any factors to weigh when making that decision, but I think it recognizes the legislature has made a policy decision that, you know, for amendments that are not specifically enumerated, courts can act as fact finders. Okay. So let me give you a hypothetical.  Somebody comes to the Superior Court, we can talk later about how the proceedings work, and says, I have a letter from my physician that says my sex has changed from the sex listed on the birth certificate. I have not had a sex change operation. I'm going to ask you later what in the world that means. I've not had a sex change operation, but my physician's position is that my sex has changed. Should the Superior Court judge grant that application? Assuming the, you know, after receiving the evidence, holding the hearing, if the Superior Court judge determines that the change is not for an improper purpose, I think the Superior Court should. Let me give you a different hypothetical. What if a minor who under Arizona law is not permitted to get a sex change operation before the age of 18 goes to the court and asks for an order to have their birth certificate amended because they're actually prohibited under Arizona law from having a sex change operation? Would the Superior Court have the authority to issue an order allowing for the amendment of the birth certificate in that instance? Yes, Your Honor, and the Superior Court has done that. The Director has processed amendments to the sex marker field for minors based on a court order without proof of any surgical procedure. And so when that court order comes to the Director of DHS, there are no questions asked. There's no requirement to tether the requirements from A1, 2, and 3 to the court order that's issued independently by the Superior Court under A4. That's correct. So the, I think the review process is outlined in R9-19-103. It sort of outlines, you know, you look at the request, you look at the evidentiary document, and their job is to just determine, does the evidentiary document support the request? Well, in the case of a court order, the Director's job is just ministerial, is it not? Yes. The Director doesn't look behind the facts anymore. The Director just says, as my job is ministerial under 1 through 3, it's now ministerial under 4. You've handed me the court order, I must change your certificate. Right, that's correct. But I think the Director would look at the amendment request and say, if the person has requested to change their name, but the court has only ordered a change to the gender marker, that would be a mismatch, and that evidentiary document wouldn't support the change. Okay, but I'm just saying, the Director doesn't look behind whether the justification is sufficient or not. Right. I have a different question, and that is, what reason, rational, what rational reason differentiates those who may go through the physician-only process and those who must undergo the more expensive, time-consuming, and privacy-threatening process of going to court? What is the reason for differential treatment? So Your Honor, I want to note that plaintiffs did not challenge the court order process. They did not make an argument that that's unconstitutional. The process, going to court, isn't unconstitutional. My question is more a question about equal treatment. Why are some people required to go to court when others are not? And those processes, one is more onerous than the other. And why is having a sex change operation the only thing that allows a person to go through the streamlined process? So Your Honor, I think that goes back to the Director's ministerial role. There's a certain... I understand that your client is ministerial, but are you defending the constitutionality of the current system? And if so, this is a valid question for you as well. Yes, Your Honor. So there are limited circumstances where the legislature has determined that some other form of evidence is sufficient. Why? That's what I'm... I don't understand a rational reason why those who have had surgery are treated differently than those who have not had surgery. I'm looking for a rational explanation of requiring one group to undergo a difficult process and one group to have access to a simple process. So Your Honor, I think that the legislature has determined that that, you know, if someone has... But that doesn't help us. In other words, the argument of the other side is that this isn't... The legislature has made an irrational distinction with respect to people whose sex has changed, but not by virtue of an operation. So tell us why that's not an irrational distinction. Well, Your Honor, A3 does not foreclose somebody in that group who hasn't had a surgical procedure. No, I understand. That's your position. I understand it. Very different question. It may be that there's no difference because the procedures are equally burdensome or not equally burdensome. That might be your answer. But some people that don't fall within A3 are being required to go through a different procedure. What's the rational reason? I know the legislature chose that. What's the rational reason for putting them through that different procedure? Well, Your Honor, I wouldn't frame it that way. I would say... But I framed it that way, so try to answer. Yes, Your Honor. So I would say that the legislature has said if somebody has had a surgical procedure, we can determine whether that's sufficient to support a change to the sex marker. That doesn't need to go to a court. We can accept the position. Let me ask you this as a follow-up to my earlier questions and the questions that you've received from my colleagues. I understand that your interpretation of A4 allows for individuals who have not had a sex change operation to go to the court and seek an alternative mechanism to have their birth certificate amended. And we may very well agree with you, but neither what you say nor what we say is going to be binding on the lower courts in Arizona unless the Arizona Supreme Court finds the same. So if we or the Arizona Supreme Court held that A4 does not allow an amendment without a sex change operation or somehow tethers the requirements of A3 to getting a court order under A4, does that change your position on the equal protection or due process claims brought by plaintiffs? I think that would be a different case if you're saying if the Arizona Supreme Court said, no, you cannot go to court. I think that would be a different case, but that's not the case here. Well, I mean, it might be the case here because we have no decision. And as I understand from reading the record and plaintiffs raised some of these issues, there are inconsistent decisions coming out of the Superior Court in Arizona. And there are some lower courts that are denying court orders to individuals who aren't able to prove that they've had a sex change operation when they're going through the A4 process. So I think this may be that case where we can assume that A4 is tethered to A3, in which case I'd like to understand how that changes the analysis from your perspective. So, Your Honor, I'm out of time. Well, please answer my question. If we have other questions, we'll let you answer them, and then we'll figure out the time at the end. Okay. Thank you, Your Honor. So, to your point about the Superior Court issuing different, you know, inconsistent rulings, we acknowledge that. We don't dispute that some of the named plaintiffs were told that, you know, A3 was a requirement by a Superior Court judge. But this is a facial challenge, and we're talking about whether this statute is unconstitutional on its face in all applications. Other Superior Courts have reached a different determination and have granted this. Just take my hypothetical for purpose. I hear what you're saying, this is a facial challenge, but your argument is based pretty heavily on the idea that A4 offers this other route for individuals to be able to change their birth certificate. So, let's assume for a moment that A4 does not provide this separate avenue to do that. How does the analysis change for you with respect to plaintiffs' equal protection and due process claims? Well, Your Honor, I think that in that circumstance, we would have to look at, you know, does this – does A3 classify based on a – Right. So, that's your argument. Can you address that? I don't believe that A3 draws a suspect classification. It does not offer, you know, a benefit to one sex instead of another. It applies equally to anyone who has undergone a surgical procedure or who has had a chromosomal count that establishes their sex as different. It is not a classification based on transgender status. The plaintiffs conceded below that, you know, an intersex person, somebody with congenital adrenal hyperplasia could use A3 to amend the sex marker on their birth certificate. So, I think that there is, you know, it doesn't draw a suspect classification based on sex or transgender status. I think that that would be the analysis if we're assuming that A4 doesn't authorize. I would like to ask a follow-up question because you brought up intersex individuals. There are intersex individuals who do not have surgery but who still want to alter the gender marker, and I presume your answer is that they, too, have to go through A4. I mean, think Conclave, right? The movie, for an example. So, your position is that person would have to go through A4 if they wanted to change their gender marker? I think the presumption for any change to a birth certificate, a name, and any of the fields that aren't listed in statute or in rule, you can go to court and ask the court to amend it, and the court can do so if... When you're done, I'm sure. Yes, and the court can make an amendment. The McLaughlin case says that the superior court has broad authority to order ADHS or the director to make amendments to birth certificates. So, that's kind of the default process. And then A3 offers, you know, we will accept this evidentiary document as sufficient proof to change the sex marker, and you don't need to go to court. A simple question which probably doesn't have a simple answer. Has the director taken a position about what the phrase sex change operation means? So, your Honor, in our briefs, I think we've outlined the plain meaning of sex change operation as a surgical procedure to change someone's physical sexual characteristics. Okay, but that doesn't answer my question. Yeah, does it require changes to the genitalia, or is it sufficient, for example, to have breast reduction surgery? Is there an official position on what type of surgery is included? Does it even matter really what the director says, because there's an Arizona Court of Appeals case that is directly on point that says a top surgery, for example, is sufficient to be able to show that there's been a sex change operation for purposes of getting. Yes, yes, Your Honor. So, the decision you're referencing, the court said for a transgender man, someone assigned male, a female at birth, a top surgery was sufficient. The person was not required to forego procreation. So, the director has accepted verification of many different kinds of surgical procedures. There isn't, to my knowledge, a checklist. Well, when you say the director has accepted them, have they accepted them under a three or under a four? Under a three. So, somebody could apply under a three and say, I've had a sex change operation over my... It would require doctors. A doctor would have a doctor's certificate, but the doctor's certificate doesn't have to attest to a change involving genitalia, the bottom, if you will. It could attest to some other procedure that the doctor believes establishes a sex change. It has to verify that the doctor has performed a surgical procedure that establishes the sex is different. And those people have the ability to move in under a three. So, the legislature has said... So, if that's right, who's left under a four? People who have not had a surgical procedure of any kind, right? Well, yes, Your Honor. Anyone who wants to change...  But if they have had a surgical procedure, in your view, they come in under a three. They could do either, correct? I mean, a four is a catch-all provision that allows any person who wants to go to court to obtain an order to amend their birth certificate, the ability to do that. They can come under a three, but still might choose to go under a four. And people who are precluded from changing their birth certificate under a one, a two, a three... By the way, a two, these other provisions are also fairly limited, correct? So, a two, let me give you an example. A two is a paternity, but only by voluntary acknowledgement. So, if you have an individual who wants to change a parent who cannot get another parent to volunteer that they have the birth certificate amended, you would have to go through under a four to get that sort of amendment, correct? Well, yes, Your Honor. So, a two is if someone voluntarily acknowledges their paternity and executes that statutory acknowledgement. Right. And so, if they don't, they have to go through under a four. Yes, Your Honor. So, let me ask... I think I agree with everything Judge Desai just said, but I want to just be clear in my own mind. What you're saying is that somebody who has had an operation that doesn't involve genitalia, to make it simple, but has a doctor's certificate that says this operation, as a result of this operation, their sex marker has changed, their sex has changed, isn't required to go through a four. They can go through a three, and the director, upon receipt of that certificate, will exercise his or her ministerial duty to change the birth certificate. Yes, you have to complete the application and pay a fee as well. Yes, but... Thank you. Yes. Are there any other questions? Okay. We'll put two minutes on the clock for your rebuttal, and hear from the interveners, who will also have 10 minutes. But this is a difficult case. We have lots of questions. So, if we run over on time, we'll handle it. But we want to be able to afford all counsel the opportunity to address the questions of the panel this morning. Counsel, whenever you're ready. Thank you, Your Honor. Michael Martynich Sautter, on behalf of the interveners, Warren Peterson, the President of the Arizona Senate, and Steve Montenegro, the Speaker of the Arizona House of Representatives. Before you get started, I have a very broad question. Okay. You disagree with anything he said? I think I disagree with a fundamental question that's addressed in the court's focus order. No, no, I'm not asking what the fundamental... I'm not sure that you disagree with... We disagree with the interpretation of A4. He said a bunch of things. Anything he said that you think wasn't right? I think the first thing that jumps to mind is that the legislature disagrees with the director's interpretation of A4. And in particular, the legislature contends that subsection A4 does not create any freestanding authority of courts to order amendments to... So, walk us through the statutory interpretation that you believe makes A4 more limited than the plain text of the statute. Absolutely. We believe that there's three considerations that dictate that result. The first is the text of the statute. And in particular, the text of the statute does not speak in terms of granting authority to courts. Instead, the text of the statute directs the director, under certain enumerated circumstances, to amend birth certificates. And one of those enumerated circumstances is the receipt of a court order. The second key consideration is the legislative history underlying subsection 4. And if I could just talk through that really quickly. The text that is in subsection A4 was added in 2004. And prior to 2004, the text that is now in A1 through A3 was housed in a different statutory provision, section 36-326. And in 2004, the Arizona legislature undertook a comprehensive reorganization of the statutes addressing vital records. And one sort of small component of that reorganization was the creation of a new section, 36-337. And the legislature moved A1 through A3 from 36-326 to 337. And then it added subsection A4. And the Arizona House put together a bill summary explaining that comprehensive reorganization. For a number of provisions in the bill, the Arizona legislature identified changes that they intended to existing law. But they also have a category of statutory changes that they labeled as intending, quote, no substantial change. So I'm having a difficult time understanding how, under sort of a strict textualist analysis, that we even get to all of what you're talking about here with respect to the legislative history or the intent of the legislature. Because I read A4 in the plain text to be very clear that the director can amend a birth certificate upon receipt of a court order ordering an amendment to the birth certificate. Not only can, but shall, I believe. Shall amend. And where in the statutory scheme is there a limitation on what can trigger a court's order ordering an amendment to the birth certificate? Well, I think each of you, Your Honors, have identified an important point. But there's a key distinction. Between what and what? Yes. There's a distinction between when the director must amend a birth certificate and when a court has authority to order an amendment. Okay, that's what I'm asking. Where do you find any limitation on the court to make such an order regarding a sex marker? There's no limitation, but there's also no grant of new authority. So if there is some independent authority that's separate and apart from A4. I don't understand why the statute doesn't provide that authority. And as far as I understand, individuals are doing this. They're going to court and they're asking for courts to issue orders ordering an amendment to a birth certificate. We acknowledge that in practice in the Superior Courts of Arizona, this has happened. Well, let me ask you a question in a different context that maybe doesn't have so much, you know, content outside of what we're talking about. Let's say someone is, their birth certificate says they were born in Phoenix, but in fact they were born in an entirely different town. And that's not provided for in, you know, 1, 2, and 3. So that person goes to court and says, this is wrong. I'm so proud of this small town that I'm from. I'd like you to change and here's proof. Here are my parents telling you where I was born. Can the court do that or not do that? So, Your Honor, I am not aware of any independent provision of law that would authorize that amendment. So you're saying basically the court order is a nullity. I mean, if there's no process and there's no content to that, why is it even here? Well, it's not a nullity, Your Honor. We're not saying that A4 prohibits courts from ordering amendments. Well, when can they order an amendment? Let's just start there. Sure. So there needs to be some other provision of law. Where is it? What other provisions are there? Yes, Your Honor. So I think the most obvious example is contested paternity cases. In those cases, there is authority to adjudge paternity and order the amendment of a birth certificate. Where are you getting that from? Are you saying because there is an A2 provision that talks about paternity, are you referring to an entirely different statutory scheme? An entirely different statutory scheme. How do you deal with McLaughlin? Your Honor, I would have two things to say about McLaughlin. There's no independent statutory scheme that says you may list both mothers, in this case, if you would, as the mother. The court orders it nonetheless. It's not something authorized by 1, 2, and 3. So therefore, there must be, unless you think it's incorrectly decided, there must be some basis for a court to order amendments to birth certificates that are not otherwise provided by other statutes. Yes, Your Honor. As we understand it, no party argued in that case that A4 was not an independent font of authority. So the court did not, as far as we can tell, address that issue. But to the extent that marriage of McLaughlin does stand for the proposition that A4 is an independent font of authority, we respectfully disagree with that and believe the Arizona Supreme Court would rule differently if presented that issue. Okay. But at least the only appellate decision in Arizona dealing with this issue does seem to assume that A4 is an independent font of authority. Yes? Yes. Okay. Okay. So let me make sure I understand your argument. So notwithstanding the cases and the practice in Arizona that indicate that A4 provides a separate branch of authority for courts to issue an order to amend a birth certificate, your position here today is that unless there is some other statute in Arizona that expressly allows the court to issue an order amending a birth certificate, so we have to go scour the statutes for any possible circumstance, including the one Judge Graber gave you as a hypothetical, or, for example, the ones that I've asked about today, we'd have to go find a separate branch of authority in the statute for A4 to have any meaning? I would disagree with two aspects of that framing. The first is that it need not be necessarily an express statutory authority. There may well be circumstances, particularly in the family law context, there are authorities regularly exercised by courts that are not necessarily expressly authorized by statute, but... It sounds to me like what you're saying is that when the legislature wants A4 to be able to be used broadly in cases that are not objectionable to them, it's fine, but when it's objectionable to perhaps their intent, then they're going to say that it needs to have some sort of specific branch of authority to the courts, because I'm not understanding the distinction that you're making. I guess I would disagree with that framing. It's not really a question of whether or not the legislature favors or disfavors any particular sort of amendment. It's a question of whether or not there is any authority independent of A4 that authorizes amendments. And I think the second thing that I would sort of disagree with in the prior framing is that the statutory definition of court order is not limited to Arizona state court orders. It includes state court orders from every other state, as well as many tribal court orders. So it's not really a matter of identifying a specific Arizona statute, for example. There could be either statutory or common law or regulatory authority in other jurisdictions that would lead to a court order, which, if presented to the director, would require her to amend the birth certificate. I would like to, if I may, go to a question that I asked your predecessor at the podium, and that is, what is a rational explanation for why transgender persons who have not undergone surgery are treated differently? I mean, take two otherwise identical transgender men. Both are under the care of a physician. Both have gender dysphoria. Both have hormonal treatments. Both have transitioned socially. Both have beards. One has had surgery. One has not. Why are they treated differently? Your Honor, the legislature has made the determination that... I know that. Why is it rational? Well, the determination they've made is that the sex marker should reflect information that is objectively verifiable and observable. And for one... It's verifiable and observable, just not in every aspect. In one case, you're relying on a physician to say that the person has made this transition and also has had surgery. But in my example, there are lots of observable things that have happened. That's right. Not every trans... And I see that I'm now... Please answer the question. Yes. Not every transgender individual has transitioned in precisely the same way. That's my point exactly. So why are some transgender individuals, in my example, transgender men, why are the two of them in my example, one can get a physician's certificate and one, in your view, can't change their gender marker at all. And in your colleague's view, can change it only by going to court. What is the reason for that? Yes, Your Honor. Besides, it just seems arbitrary to me, I guess. I'll just put that out there. Well, in our view, for the reasons stated in our brief, the statute is subject to rational basis for view. And that recognizes that the legislature needs to draw lines somewhere. What is rational in this case? What is specifically rational about it? When, in my example, the treating physicians equally certify that this person has transgendered and that has transitioned to a different gender and requests a new marker. So what needs to be objectively verifiable is not the fact that a physician has certified it, but that if, for example, a dispute arose, there would be some way to objectively verify the on-the-ground facts through genetic testing in the case of a chromosomal abnormality or a physical examination in the case of a sex change. So in your view, what is the definition of sex change operation? So what would satisfy it? And do you agree with Arizona Court of Appeals case in Beatty that says some surgery other than any surgical, proof of any sort of surgical operation would be sufficient? I think the director has accurately characterized the plain meaning of the statute. And I agree with what Mr. Aerosmith said. So you agree that anybody who has had an operation that the doctor says changes the sex is eligible under A3, whether or not that operation involves genitalia? Well, I think it has to change sex characteristics. So, I mean, it's... I understand. I understand. I'm just asking you a yes or no question. In other words, the doctor says, this person who was born male has now had surgery to enhance breasts. And my opinion is that that has changed their sex. And your position, at least Mr. Aerosmith's position, is that person doesn't need to resort to A4. They might be able to, as Judge Cezanne talked about. But this is an automatic. This is one of those ones where you just send the certification to the director, and the director then changes the birth certificate. You agree with that position? Yes, Your Honor. I think that's the plain meaning of the statute. Whether the legislature had that in mind in 1967, I don't know. You think so? The plain meaning of sex change operation? Correct. Is any operation that changes your sex? Your sex characteristics. In the discretion of a physician. Because really, essentially, it is a physician who is writing a note that says there has been some sort of operation or surgical procedure done to amend or to alter the person's sex. Correct? I mean, I think... They've had a sex change operation. If a doctor wrote, literally, on an order, this individual's had a sex change operation, and therefore, you know, is authorized to be able to have their birth certificate amended, that would be enough. I mean, I think there are probably outer limits to the discretion of the physician, because it does need to change the sex characteristics, but... Who would challenge that? Because this is a ministerial role that the director plays in this context, correct? Yes, Your Honor. And I think there's a distinction between what the law provides and whether anyone is able to challenge it. But, I mean, in terms of what the law authorizes... What challenge could be brought? I think that is a very important question, because your reliance on a rational reason has to do with verifiability in the sense that you have described. But who does that? It is ministerial. When the doctor's note arrives, the birth certificate is changed. So in what circumstance is that challengeable? Well, I mean, the director has an obligation to ensure that the documentation that is provided reflects a sex change operation. Well, that's precisely my question. So if a physician wrote on a piece of paper or on their note, there's been a sex change operation, that is all that the statute requires. I understand your argument to be that that's the text of the statute and that there's a ministerial role that the director plays. So that would arguably be sufficient if you walk in with a document from your doctor that says there has been some sort of surgical procedure or operation to change the sex. That would be enough. Well, yes, Your Honor, in the sense that there's no mechanism for the director to conduct discovery or conduct deposition. And Mr. Ellison said that there's no fact finding. It is a ministerial duty. So where does this whole verifiable question come in in the real world? Well, I mean, I think that the outcome of the surgery, assuming that it happens, is objectively observable by a physician. Right, but why is that? I guess I don't understand why that matters. You've hooked the rationality of the statute to the idea that there's some kind of visual verification available. But in what context does that matter? Who can challenge what the physician says? Who can challenge the physician who says a person without surgery is a transgender individual? Well, so there's not a in-the-moment challenge, but the physician would likely be subject to criminal and professional licensing liability if that certification falls. Okay, so the backstop is sort of the regulations and the licensure that physicians are subject to. Yes, Your Honor. So if they're going to... So at the level that the director is dealing with this, any doctor's note that comes in is going to be sufficient for purposes of what the statute requires. And any other problems that might occur sort of with physicians providing those notes in contexts where they are not permitted would be an entirely different process relating to licensure. I have a question for you that has to do... And I'm not sure that Judge Graber got an answer to her question about sort of what the rational basis would be. I understand your argument is that this law is subject to rational basis review, but I want to ask you what your argument, your best argument is for how the sex change operation requirement is substantially related to an important state interest. Assuming that there is a heightened standard. So if we're applying a heightened standard of review, what's your best argument for that? I think the interest that most clearly is sufficiently substantial to qualify for heightened review is this anti-fraud interest. And it serves... The anti-fraud interest is itself advanced by... So you think that people lie about being transgender and that doctors will help them lie? Is that... What do you mean by fraud? Well, I'm not sure that we're suggesting that doctors will help them lie. Or themselves. I mean, I guess, what is the fraud here? Well, I mean, there is a risk that is foreseeable. And there are cases for use of birth certificate to commit fraud. And we cited at least one Ninth Circuit case in our brief. But so there is an open-ended risk to steal identities using a birth certificate. And so there needs to be mechanisms. If a dispute were to arise to adjudicate, is the person claiming the benefits of this identity the same person reflected in the birth certificate? Is there also an interest for the state? Because all of these provisions are quite limited. There aren't really... There isn't any broad right for anybody to come in and change their birth certificate. So I'm curious to know sort of what the interest is of the state of maintaining records or having sort of even just the administrative aspect of having birth certificates changed and then maybe changed back. And sort of, you know, talk to me a little bit about... I don't understand the fraud argument. I really don't. I don't know if there's data to support this idea that there is rampant fraud in the amendment of birth certificates. I think it is more interesting this notion that the state has limited resources, has an interest in maintaining its vital records to having some sort of clarity and consistency among those records. So what's that interest? Yes, Your Honor. And I think it's important. There are some broad interests for the vital records regime generally and then some specific interests for A3. And those interests don't always point in the same direction. There's a strong state interest in accurately recording vital records, particularly of birth. You know, there's important demographic research, medical issues supported by accurately catching and reporting the sex observed at birth. There are, in some circumstances, interests other than just maintaining those sorts of vital records. And those interests may point in favor of modifying the originally observed and recorded information. You know, A1 through 3 identify certain specific situations where the legislature has determined that there is some sort of policy that favors amending the birth certificate. This administrative stability issue comes in that the director, you know, and the state has many different administrative obligations and amending birth certificates is one of them. It undoubtedly requires some degree of personnel time. It also creates the risk of confusion if there are amendments, you know, in large volumes, inevitably there are situations where- Sure, I don't understand how this argument works, given your position that A4 is not available to people without operations. If it was available, as Mr. Allison suggests, then it seems to me there's a quite rational distinction, which is that an operation is a clear and unmistakable marker of a sex change. But as to other things, we'd like a finder of fact to determine whether or not there was a sex change. That, I could make that distinction. But if you're giving people who don't have an operation no mechanism whatsoever to seek a sex change, then it seems to me it's hard to understand why that's rational if even, if a surgery, if only to enhance breasts or to reduce them, is sufficient but affidavits from seven doctors saying the hormones you've taken have irreversibly changed your sex isn't enough. Why would that be a rational distinction? Yes, Your Honor. And I understand that I'm not persuading the panel necessarily on the rationality of it, but the legislature- Well, see, I think I would be persuaded the rationality of it if you accepted Mr. Harris's position that those who took hormones or something just had to go prove- The director doesn't want to have to do that ministerially. They want to have a court order that tells them to do it. I could understand that. But what I don't understand is why somebody whose sex has unmistakably been changed through methods other than surgery is kept out of this scheme, but everybody who has surgery is allowed in it. What's the rational reason for that? Right. Well, I guess it's a question of who determines what is an unmistakable change. Well, a court can. You're saying a court can't. I'm saying if a court can, then I'm fine. But if a court can't, then there's no mechanism at all for a person with an unmistakable change, even though it wasn't caused by surgery to seek the amendment of the certificate. What's the rational reason for that? Well, and what the legislature has determined is that the unmistakable change is undergoing a sex change operation, which- Well, I don't care what the legislature has determined. The legislature has set up these classifications. The question for you and for us is whether the distinction is rational. And so tell me what possible reason I would want to exclude from the possibility of getting their birth certificate changed. Somebody who had a heavy course of hormones and who a doctor said that course of hormones has changed their sex. And you're saying, tough, the legislature doesn't think it does. I think the problem is that after the fact, you know, imagine that they underwent a heavy course of hormones and then three years later, there's a dispute. There would be no way to objectively- Dispute about what? A dispute about identity, such that as part of that dispute about identity, it was necessary to determine the person's sex. There would be no way three years after they ceased that treatment necessarily to objectively determine, yes, this individual is the individual who is undergoing those hormone treatments. I'm not understanding your scenario. Maybe try again. Are you suggesting that there may be multiple changes to the birth certificate over a period of time and that's the problem? Or that there would be some difficulty in identifying the person's gender because all they underwent was hormone therapy? I'm not understanding what- I think the latter, Your Honor. I mean, again, the scenario that we're envisioning is a scenario where there's a dispute about correlating a particular birth certificate to a particular individual and determining whether or not that individual is in fact the person- In what context does that occur? Well, so I mean, it may occur in disputes about whether someone's eligible for a government program. I mean, it's not unusual for there to be disputes about identity in the context of obtaining some sort of government benefit. Not every one of those disputes, maybe not most of those disputes, will get down to the brass tacks of comparing a specific individual to a specific birth certificate. But because birth certificates are sort of at the base of the government record keeping in Arizona, the legislature has determined that it's necessary to have some objectively verifiable way to correlate the information- And a doctor's certificate and opinion is not an objectively certifiable way because I can't tell by looking at somebody whether or not the doctor is right? Well, I think the problem is that if the doctor's note says John Smith, you know, on this day in 2026, John Smith is undergoing hormone treatment. If a dispute occurs- Well, the doctor has to say no. It wouldn't say that. It would say John Smith is a man. John Smith has gender, you know, was born, you know, identified as female at birth, has gender dysphoria, is under a doctor's care, is undergoing treatment by hormones and has transitioned socially, and is a man. That's the opinion. Yes, Your Honor. Not just somebody taking hormones and that's the end of it.  But even with that opinion, if that opinion is talking about John Smith and later there is a dispute about whether this person over here is in fact John Smith, then that opinion does not allow a determination of whether this individual has- Why does the doctor's certificate about a sex change operation, assuming that there's more than one person in the world who's had a sex change operation, allow you to conclusively decide that the person standing in front of you is Jane Doe? So it's not conclusive, but it is an objective criterion that can be added to other criteria, like age, like other information that may be available. But it doesn't correlate any more to the person. And I guess I'm having trouble seeing this also because if the birth date is correct, the parents are correct, the location of the birth is correct. Well, the name would then be on the birth certificate. It would be changed along with the sex marker, presumably. But I don't understand where the difficulty arises that's different than any other birth certificate question, since your photo isn't on your birth certificate and you don't look like that anymore anyway. I don't understand where the problem comes in. Well, Your Honor, I guess the doctor's note that relates to something other than a surgical change does not necessarily provide information that helps you match the person referenced in the note to some other person who may not- Neither does a doctor's note that says to somebody it's that surgery. But it's not the doctor's note. The information that allows you to match only comes from the doctor's note. Well, but there could be a physical examination to determine whether or not that person has the characteristics. But that's what happens with birth certificates. I mean, you're talking about the use of a birth certificate. When does a potential mismatch for a birth certificate lead to a physical examination? If someone comes in and- You know, I could borrow another woman's birth certificate and it wouldn't help to do a physical examination. It wouldn't say anything about where I was born, when I was born, who my parents were. I guess I'm just having difficulty visualizing the practical problem that you're trying to describe. Well, and I think it's- I would say two things in response to that, Your Honor. The first is that the possibility that it can be verified deters misuse. If individuals know that that can be confirmed objectively- That's what I'm having trouble understanding. It doesn't even seem like a possibility to me. I don't understand the scenario where a birth certificate would lead to the kind of physical examination that you're talking about that would somehow verify something. I don't understand that. Unless somebody was like born with one leg and you want to see if they actually were born with one leg, that it's not normally going to- I guess I just don't see the connection between birth certificate information and physical examination. I bet that's a mish. And Your Honor, maybe if I took the identity verification interest outside the context of fraud and put it into the context of, you know, a dead body is found and the identity of that individual is not known. In one category of government records, the police might refer to in trying to identify that John Doe or Jane Doe body is a birth certificate. In that case, the physical characteristics are going to be examined by the medical examiner. And that medical examiner will not be able to ascertain sort of non-objectively observable characteristics of gender identity in a way that they can observe the physical- How are they going to match the random dead body to a birth certificate anyway? I mean, in your example. Well, I mean, again, I don't think the state- I don't think the legislature is contending that a birth certificate alone without any other evidence will serve that role. But a birth certificate can be an important piece of evidence coupled with other evidence, the nature of which will vary depending on the particular case. Okay, Counselor, I think we've taken you well over your time. And sorry, we've had so many questions for you. We'll put some time on your clock for rebuttal. Let's hear from- Thank you, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Rachel Berg on behalf of Plaintiffs' Appellees and with me at counsel's table is Patrick Hayden. I would like to start out by directly addressing Your Honor's questions in the order. The Court should not certify the question of whether Section A4 allows a person to obtain a court order to amend the sex marker on their birth certificate without undergoing a sex change operation. This issue is not dispositive of this litigation. Assuming plaintiffs can amend their birth certificates through A4, there is still a constitutional violation. Well, so let's- I want to explore that with you because I'm not sure I fully understand your position on it. Let's assume that Mr. Arrowsmith is correct and that either we or the Arizona Supreme Court say sex change operation- people who've had any sort of operation that changes their sex can automatically, under the A3 provision, apply for a sex change on their birth certificates. So let's assume he's right about the scope of A3 and all we're left with under A4 are people who contend that their sex has been changed, has changed, but haven't undergone an operation. Why isn't it- and again, I'm assuming rational basis review for a moment. We can get back to what kind of review. Why isn't it rational to say, look, for everything else, show it to a judge. The judge finds that your sex has changed by virtual hormones or psychological treatment or whatever, your birth certificate can be changed, but we don't want to burden the director who acts in merely a ministerial role here in making those initial decisions. When there's been surgery, it's an easy decision. Doctor certifies there's been surgery, that's it. When the doctor certifies it's occurred through other means, we just want to find a fact to find that it has. Why does that unconstitutionally discriminate? So the Supreme Court has a line of cases holding that the equal protection injury is not whether someone obtains the ultimate benefit, it's whether they've been denied equal opportunity. But if they've been given equal opportunity, it's just through a different- we have a fact-finding mechanism that we've set up in the courts when you haven't had surgery for a judge to say, yes, your sex has changed. Now, put aside a second what that is because the statute really isn't clear about that, but let's assume that's the case. And if you go to a Superior Court judge with a certificate from a doctor that says, your sex has changed and here's why I concluded that, that the judge should or must grant your application. So haven't you been afforded exactly the same right except in a different forum to have your certificate changed? Not quite, Your Honor. So a non-transgender person is able to change the sex on their birth certificate? There is no non-transgender person that Arizona law allows to have their sex changed on their birth certificate. Yes, there is, Your Honor, through the corrections process outlined in our brief. Yeah, but let's just say the corrections process clearly deals with ministerial mistakes. I'm talking about A1 and A2. See, you're talking about C. No, it's called a corrections process. Yeah, there's a separate statute for corrections and amendments. And the corrections statute is where a cisgender person presumably would go to fix a typographical error. But the amendments process is what we're looking at. Right, I'm just making the point here, Your Honor, that a non-transgender person to correct or amend the sex on their birth certificate has- Wait a minute, you're saying correct or amend. And I think that the correction process allows a cisgender or transgender person, for that matter, to go and correct a typographical error on their birth certificate, correct? If that transgender person met the very specific qualifications- It allows any person who has a typographical error on their birth certificate to correct that typographical error. That's the corrections process, correct? Yes, Your Honor. Okay, so the question I think that I want to ask you is doesn't your claim get exponentially better if the Arizona Supreme Court holds that A4 does not provide a separate avenue for individuals to have their birth certificate amended through a court order process? So for example, and I asked Mr. Aerosmith about this in his opening, a minor is unable under any circumstance in Arizona to use the process under A3 to amend their birth certificate because there is a statute that prohibits sex change operations for minors, correct? Yes. Okay, so if you knew that A4 did not, if there was a holding from the Supreme Court that A4 did not provide this alternative mechanism, that makes your claim, your Equal Protection Claim exponentially better. And putting aside for a moment, whether or not there is some argument that you have even with A4 providing the mechanism that this plain text seems to provide. But right now, like Judge Hurwitz is asking you about, there is this alternative basis for your clients to be able to amend their birth certificate under A4. So getting guidance from the Supreme Court of Arizona about what the limits of that is seems to be highly relevant to your Equal Protection Claim. We disagree, Your Honor. We believe that the law is clear based on the plain text of the statute that our clients can amend their birth certificates through A4.  Can. Oh, really? So even if the state of Arizona took the position that the people that you represent can automatically, can get their birth certificates changed under A4, you don't want that? It seems to me, we don't argue that because our interests. You have clients who want their birth certificates amended. Mr. Arrowsmith, representing the state of Arizona, forget the interveners for a moment, says, we're cool with that. I represent the director. You go to court and get an order. We'll change your birth certificate. And you're saying, my clients don't want that. They would rather that the scheme be declared unconstitutional. Is that your position? Our position, Your Honor, is while we're very frustrated with how ADHS interpreted A4 in the past, which we believe was an incorrect interpretation. And they've remedied that. Their representations in their briefs. They have remedied that previous interpretation that required something more for an A4 order. Now, any order from the court that orders the change of a birth certificate the director of DHS is granting, correct? Yes, Your Honor. And they need to be held to that interpretation. If I understand your argument, and I may not, it is that A3 is a simpler, cheaper, faster, and more private process. And that having one group defined by surgery, having that easier process available, and another group not having had surgery has a harder process. But that's the problem. Is that your argument? Our argument is that a non-transgender person has to amend their birth certificate. No. Let's say we don't buy that argument. I mean, I must say the provision you're citing is only for clerical errors. So let's just, so now we're just dealing with a transgendered person who hasn't had surgery. And I think that's what Judge Graber said. That's my question. Is that your argument, or part of your argument, that there are two groups of transgender individuals? Some have had surgery. Some have not had surgery. The ones who had surgery have a cheap, easy, quick process. The ones who haven't have a much different process. Sort of the difference between buying a rifle by just filling out a form that says, I'm not a felon, and having to go to court and get an order saying you're allowed to buy a rifle. I mean, that's, I guess, what I understood to be embedded in your argument. Yes. The private administrative process and A4 are not equal processes. A4 is far less private and much more time-consuming and expensive. It forces transgender individuals to out themselves in open court and not have to see their face. Where do you get that from? There are provisions in superior court rules that allow plaintiffs to seek in-camera proceedings and sealed proceedings. It happens all the time with adoptions and all sorts of other domestic relations things. You're assuming that a superior court judge would not treat the application as confidential and decide it in other than a public record basis? Well, they may or may not. So as happened with one of the main plaintiffs in this case, the court denied their motion to seal. And that's at SCR 970. But you're making a facial challenge, are you not? Yes, we are. But the point is that A4 is not an equal process to A3. It also requires hiring counsel and, in some cases, traveling out of state. But it has to be an equal process, though, counsel. For your equal protection claim, you're arguing that there is not a process that's easily readily available to your clients. I don't think it has to be an equal process. Our clients have to have an equal opportunity to be able to amend their birth certificates in the same way that non-transgender people do. You think equal opportunity means through the same process? Yes, through a private process. So your reading of the statute is that the statute would be unconstitutional unless it allowed your clients to invoke the A3 process. I'm not getting a process, the A3 process. So you mean A3 would, can you reframe the question? Sure. I mean, everybody who's had an operation, both sides, both people on the other side now agree, as long as they've had a sex change operation of any kind, they can invoke the A3 process. Correct?  Okay. So now we're left with those people that fall within the plan of class that haven't had a sex change operation. Correct? Correct. And you're saying to us the statute is unconstitutional if it doesn't afford them the same process that people get under A3. Is that what you're saying? Well, Your Honor, there needs to be an adequate justification. Well, no, I'm just asking. Yes or no question. Are you saying your clients are entitled to the same doctor certification process? Our clients are entitled to a private administrative process because that is what all other non-transgender people are able No, forget non-transgender people. Okay. I don't buy, maybe the other two will buy it, I don't buy your argument that the statute, which allows corrections to birth certificates, covers anything except clerical errors. So assume that to be the case. Now we're only dealing with transgender people. And there are two groups of transgender people, the ones with surgery, the ones without surgery. And you're saying the ones who didn't have surgery should have a process, the same process, to get their birth certificates changed as the ones who did? Correct. Okay. That's your position? Yeah. Okay. I just want to understand it. So therefore, it's not a discrimination on the basis of sex. It's a discrimination on the basis of whether or not a transgender person has had surgery or has not had surgery. No, Your Honor, because when the law uses sex change operation, it's using that phrase as a proxy for transgender status. But no one else, under my reading of the statute, and I'm asking you to forget your corrections argument, no one is given the ability to have their gender changed on their birth certificate, their sex changed, except transgender people. They're being advantaged as opposed to being disadvantaged. The statute affords them a... So we don't have here, you're not representing some person who's not transgendered, who says, I'd like my birth certificate changed. You're representing people who are transgendered, but don't think they can use the A3 process to get their birth certificate changed. So isn't the discrimination between two groups of transgendered people as opposed to a discrimination between transgenders and people in other sexes? No, Your Honor, because the courts have held that when the law discriminates against even just a subset of a group, it discriminates against the full group. Even though it's the only group that's afforded a benefit? See, it's one thing to say, I won't give a benefit. There are no cisgender people who ever want their sex changed other than by typographical error. So it doesn't seem like a comparator group in any way. I guess that's, it sounds like the same issue that Judge Hurwitz is having. We're dealing with two groups of transgender individuals and some who have had surgery and some who have not. And I don't, unless they disagree with this on rebuttal, I don't think that either of the appellant groups here is challenging that persons who have not had surgery can be transgender. I think they're not quarreling with that. So I think what we're dealing with is whether the law can permissibly discriminate between surgical transgender persons and non-surgical transgender persons for this purpose of changing the marker on the birth certificate. With the cases you're citing, say, you can't pick a subset of transgender people and deny them a benefit that non-transgender people get. But in this case, I'm positing to you that only transgender people get this benefit, which is being able to change the sex on their birth certificate. Now, it may be that the discrimination between these two groups is irrational. That's the question Judge Graber was asking. But I'm having a hard time seeing how it gets me to the higher standard of scrutiny that accompanies discrimination between sexes, because there seems to be a discrimination among people of a sex. Did you understand my problem? Yes, Your Honor. So, I mean, I don't have anything more to add than what I've already stated here today. So let's assume that we are stuck with rational basis for you for a moment. Can I just get a clarification from you, though, because I'm not sure that you've answered, the baseline question that has been now posed by all three of us, which is putting aside your argument about the typographical error corrections process, which I think is really the argument that you have hung your hat on, because the cases you rely on generally deal with disfavoring a group as a whole. And I think that is where your argument is with respect to disfavoring. If I give you for a moment that the statute can be read to only apply, A3 can be read to only apply to transgendered individuals, you're saying that those individuals are being treated differently than non-transgendered individuals through the corrections process, correct? Correct. Okay. Putting that argument to the side, do you have any other argument that this is a case about transgendered people as a whole being treated differently because this statute seems to really only distinguish between two subgroups of transgendered individuals, ones that have surgery and ones that don't. So it's two subgroups, not an entire group being treated as a whole differently from another group. Yes, I understand your question, Your Honor. Do you have any argument that this is something other than two subgroups being treated differently? The argument I would go back to is the case law on the subset groups and also the... What case law? The one I mentioned earlier about when a law... What is the case that you're talking about?  But isn't Phillips a case where that subgroup was disadvantaged vis-a-vis people of a different gender, men and women? In other words, here the men and women don't seem to have... When men and women who are not transgendered don't seem to have any ability to change their... This matters for purposes of the level of scrutiny that we are applying. In other words, rational. If you had a law that distinguished between tall women and short women, you would ask whether there's a rational basis. And I think that's what we're all getting at is whether rational basis review is the correct standard to apply. Well, we think that heightened scrutiny applies, but even under rational basis review, your Honor, the law... But you have to have a case that you can cite to us that says when you have two subgroups being treated differently, that is a context in which rational basis applies. Because the cases that we have say that when you have two subgroups being treated differently, that's rational basis versus intermediate or heightened scrutiny. Do you understand the distinction that I'm making here? Yes, Your Honor. I mean, so I keep going back to the point again about the two different groups here. So what case do you have that tells us that a heightened level of scrutiny applies when two subgroups are treated differently? You mean of the same class? Yes. Correct. I don't have a case with me here today, Your Honor. So let's assume we're doing rational basis review and Judge Graber asked a number of questions to the other side about why the distinctions were rational. Let me pose a possible rational distinction to you and see how you deal with it. A1 through 3 are about when the director doesn't have to exercise any judgment, when it's obvious. A doctor said somebody had a sex change operation. We're only really worried about three here. And the director says, doctor says you had a sex change operation, good enough for me. Everybody who's had a sex change operation necessarily has had a sex change because that's what the operation was for. There may be many other ways that your sex can change, but rather than try to list them out, we're saying to people who make those claims, it's not so obvious on the face of the description. So go to a judge and just demonstrate that your sex has changed. Now, this means we interpret the statute the way Mr. Arrowsmith does. And if you do, a judge will err in not ordering the change of your birth certificate. We don't have any Arizona appellate decisions on this issue. Your clients lost some cases, I guess, in front of Superior Court judges, but apparently chose not to appeal them. So we don't have any real guidance from the Arizona courts. But if that's what the statute provides, and we don't know that it's what it really provides because the Arizona Supreme Court hasn't told us that, why isn't that distinction passed a very low level requiring for rationality? These are no brainers. You had an operation. Everything else, I just want to make sure that some neutral party takes a look at it and determines that you really have had a sex change. So you're asking, Your Honor, whether there's a rational basis for the court's process? For sending everybody who hasn't had a sex change operation to go to a judge to demonstrate that their sex has changed. Because your complaint is, my clients who haven't had sex change operations are being put through a different process than those who have. Now, if we have to figure out, is there a rational reason for that process? And I'm positing one, which is that, look, it's easy. The director doesn't have to worry about it. If a doctor says you had a sex change operation, your sex has changed. So the question is then whether a doctor, I mean, a doctor's certificate would be required in all cases. So the real question to me would be, what is the rational reason to not accept a doctor's certification when there's a non-surgical transition versus accepting a doctor's certificate when there has been a surgical transition? Same question. Sort of, except that in either case, there's no discretion on the part of the government to change the birth certificate if the physician's certification is presented. So the question is really allowing a physician to certify in one circumstance, but not the other. See, and I guess, let me just add to this. There's a different basis for the doctor's certification in these two cases, right? So is there a distinction between those bases? I think there are so many questions pending that I'm confused, so I can't answer them. Forget I asked anything and answered Judge Weber's question. I think the question that is pending, and please offer a friendly amendment if I'm not getting this correct, but what is your best argument for why A3 fails rational basis review if we're applying that level of scrutiny? Okay, thanks. I'm going to turn to the court of justifications from ADHS and intervenors. As a threshold matter, all of the asserted state interests have been waived except for accuracy. First- Well, there's no waiver on rational basis. Rational basis review is any basis the court can think of, not any basis the parties have posed. So forget waiver for a moment and just explain why there's no rational basis. On preserving accurate records, that's the first justification. The surgical requirement does the opposite. It guarantees inaccuracy. It ensures that plaintiffs will have birth certificates that do not reflect who they are. On preserving records, both ADHS and intervenors concede that Arizona birth certificates are critical identity documents, not merely historical records, and that the law at issue already permits transgender individuals to change the sex markers in certain circumstances and ADHS already maintains the original birth record. Second, on preventing fraud, there is simply no evidence. ADHS's fraud manager testified that there was never any fraud related to sex markers on birth certificates. Third, intervenors point to stability of vital records and avoiding confusion, costs, and administrative burdens, but that argument rests on this pure speculation that surgery makes a transgender person less likely to detransition. There is no evidence to support that in the record or otherwise. Well, when we're dealing with rational basis review, we're not talking about evidence. When we're talking about intermediate scrutiny, we are. We're matching up evidence and stuff, but the question is whether there's any conceivable rational basis. So let me pose this one to you as a potential rational basis and have you respond to it. And I apologize because we were confusing with the questions before, but let's assume the rational, I pose this as a rational basis. It's easy to know when somebody has had a sex change, if they've had an operation, and if all the doctor says they've had the operation that changes their sex, I'm done. There may be lots of other reasons why your sex has changed, whether a doctor certifies them or not. But as to those, we're going to go make you tell a superior court judge what they are because we don't want the director to have to sort through them and decide which ones are right and which ones are wrong. Why isn't that a rational distinction? The other options are if a transgender person has medical treatment, that is something that is very easily, you know, objectifiable. That is also something that is... Well, so what if a psychologist says, I've met with this individual and although her birth certificate says male, I conclude that she is, her sex is now female because that's the way she perceives herself. And I therefore certify that her sex has changed. Must the director change the birth certificate under those circumstances? Under our requested remedy, your honor? I'm asking under the constitution. Must the director change it under those circumstances? Yes, your honor, because she's, you know, certified that the person has undergone a sex change. So that as long as you... It doesn't really matter what the evidence of the sex change is. As long as some doctor says your sex has changed in your view, that's sufficient. Well, if some doctor who's met with the individual, you know, presumably... No, no, I'm just... Don't keep changing the hypothetical on me. I've got one where a doctor says, I met with the individual. I'm convinced that she identifies as a woman even though she was plainly born as a man or born as a male and therefore I'm certifying that she's had a sex change. She hasn't taken any hormones. She hasn't undergone psychotherapy. She hasn't had any operations. But I now certify that she's undergone a sex change. It seems to me the legislature may have set up a division that says look, if she really had an operation, Director, we don't want you inquiring further. If you get something different, we'd like a judge to take a look at it. Why isn't that a rational division of responsibility? Your Honor, I'm not seeing how that's logically related to having different... Okay. So I have a question about the remedy. Let's just assume for a moment that we agree with you that there is an equal protection violation. We agree with you that it fails under rational basis review and we are at the place where we're talking about what the remedy is, what relief is appropriate. And I used to litigate cases where injunctions were the remedy that was sought and in Arizona for that matter where we obtained any sort of order from the court that finds a particular statutory provision to be unconstitutional. The remedy is typically to strike the unconstitutional provision. And here there's this... The district court struck one word out of the provision which changes the meaning of the entire legislative provision of A3. So I'm trying to understand what your best argument is for blue penciling in the statute or striking a word in the statute as the appropriate relief as opposed to striking the entire provision as unconstitutional which in my view is probably not what the plaintiffs want because now at this moment you have A3 that provides this benefit to transgendered individuals who have undergone a sex change operation. If we find that it is unconstitutional under the arguments that you have raised, why would we not strike the entire provision which then removes the benefit entirely? The district court must follow the three principles set out by the Supreme Court in the AOTE case. The principles are do not nullify more of the legislature's work than is necessary. Refrain from rewriting the statute. Why isn't this rewriting the statute? The statute says that and the legislature was very intentional in requiring sex change operation as the basis to amend a birth certificate. Now by striking the word operation it has changed the statute in a way that is not what the legislature enacted. So the district court's remedy was laser focused on just removing that one part of the statute that was unconstitutional and trying to... Why is the word operational, operation unconstitutional? I mean I think your arguments to us are that the entire provision is unconstitutional because it sets forth a process that only one subgroup is able to access, a ministerial process to amend the birth certificate without having to go to court. So I'm not understanding why the word... Your complaint doesn't say that the word operation is unconstitutional. It says that A3 is unconstitutional. Yes, Your Honor, but the part of A3 that's unconstitutional is requiring a sex change operation because that discriminates against transgender individuals as the district court found. So in remedying that the district court struck only the one word that was necessary and so what does sex change? So your view is that this is the appropriate remedy is to blue pencil in the statute and sort of have it say something entirely different, which is now an individual can use the A3 process if they have a doctor's note that says they had a sex change. So what does that mean? Sex change means what it says changing one's sex. That can be through surgery. That can be through medical treatment. It can be through living as one's sex. Sex change might be an outdated term today, which might be now known as gender transition, but that that phrase is clear, Your Honor. So putting aside your due process argument for a moment. Could a state have not have a provision for amendment of the gender on your birth certificate at all? Well, let's assume Arizona just had no statute about amending your birth certificate. It just said you even corrections. You're just stuck with your birth certificate. That would be constitutional, wouldn't it? Statute, you know, didn't have any three just didn't exist at the legislature. Next session went in and struck a three entirely. And, Your Honor, also saying everything else. And so, yeah, well, well, let's let's just say use judge judge decides. Example, they said, we don't want to be in the business of changing sex on birth certificates. So we're just doing away with that provision. And catch a four. And I don't think it matters for purpose matters, they just get away with it. Let's and we you can argue how you how you interpret a four. I guess my question is, is the state required to have a mechanism by which an applicant can change the checks under birth certificate? The state is required to treat people equally. And so, right. And no one, no, no people, certain gendered people, male, female, anything else, no person may change, may petition to have the birth, the sex on their birth certificate changed. Is that OK? The due process claims that you put aside your due process, then then there's no unequal treatment in that very specific. OK, so that leads back to the question Judge Cy was really asking, which is that we supposed to presume that confronted with. The alternatives between a statute they didn't want to pass and one that would be plainly constitutional that the legislature would have chosen the way Judge Soto rewrote it. So, Your Honor, in the AOT case, the court Supreme Court says that when you consider a legislative intent to consider the specific question is to consider whether the legislature would have preferred what is left of the statute under the remedy or no statute at all. Yeah, but here's the change expands. Here's the change expands the statute as opposed to in those cases that you cite the change strikes the discriminatory provision. Here, your change expands the statute. The benefit to cover people that it doesn't didn't change in the first place. I think that's different, isn't it? Your Honor, I'm just following the black letter law. You're just quoting something the Supreme Court said, but look at the context of that case. What did the court do in that case? In that specific case, Your Honor? Yeah, I'm not exact sure of the remedy of the very specific remedy in that case, but I will say that in this case, the undisputed facts between both defendant and plaintiff ADHS is that the legislature intended by providing that statute to allow transgender people an access to amend their birth certificates through the private process. And that's at one director ER 10. So we both agree that the legislature would have preferred to just strike that word to totally nullify the statute. I guess we can ask the legislature, the interveners, when they come up, sort of what their view about this is. But it seems to me that even if we were to strike the word or affirm the district court striking of the word, it doesn't quite do what I think you're hoping for, which is legislation that broadly allows your clients, the plaintiff's class, to be able to use a ministerial process anytime with very limited evidence to establish that they want to change the birth certificate. Because even the term sex change has some meaning, must have some meaning. And it could be that there is no medical intervention that's taking place, but simply that somebody is identifying differently and wants to amend their birth certificate. And I think there lies the problem, which is the director then has to make a determination, not a ministerial act, but a determination as to whether or not an applicant has satisfied the requirement of a sex change. I don't know what that means. Well, Your Honor, currently when they're interpreting the phrase sex change operation, they're just looking to whether the letter has that specific phrase.  And so now there would be no difference because they would just be looking to whether there's a specific phrase by the doctor. So it's sex change. So let me, I know we're taking you all over, but I just want to make sure I understand your position on this, because we've asked both sides to address whether or not we should certify some question of the Arizona Supreme Court. You're saying, even though if the court agreed with Mr. Aronsmith, there are people in your class of plaintiffs who would benefit because they would then have an avenue under the statute to pursue a name change. You don't want us to do that because you would rather we read the statute as giving those folks no avenue. No, Your Honor. We've stated that we don't think that you should certify the question because we don't think it's dispositive of this case. And we also agree with the meeting that ADHS has put forward today that A4 allows a broad- Oh, I'll tell you what you said. We shouldn't certify it because you think we should hold that ADHS is correct. That ADHS is statutory- Statutory interpretation. Or not, but whether when under equal protection and due process arguments, regardless of whether A4 provides, in fact, with the interpretation of A4 providing an alternative mechanism. Correct, Your Honor. OK, now I understand. Thank you. So I'm 17 minutes over. No, that's OK. If you want to make a closing statement, we'll let you do that. Thank you, Your Honors. We just ask that you please affirm the district court's decision. Thank you. All right, Mr. Aerosmith, we'll put two minutes on the clock. It's been a while since you've been in front of us now, but there's a lot that's happened. Thank you, Your Honor. So I'll try to address a few things. So I think the first thing is that I think you heard Ms. Berg concede that the director's interpretation in the Arizona Court of Appeals interpretation of A4 is correct, that a surgical procedure- In your view, what does that do to their claims? Well, I think that that defeats their facial claim. This is a facial challenge to A3. I think that was premised on the idea that having a sex change is the only way to change a sex marker. If they're conceding that people in the plaintiff class can, in fact, change the sex marker on their birth certificate without proof of a sex change operation, I think that defeats the facial challenge in which their burden is to show that there's no set of circumstances in which it could be constitutionally applied. I think that is a constitutional application if the Superior Court says, you know, I'm going to weigh the evidence and decide and that A3 is not- And do we not interpret the argument to be that there is no opportunity to amend the birth certificate through a ministerial process? Why don't we look at- Why don't we interpret the argument to be that they are- they want the ministerial process as opposed to a court-ordered process? I understand that argument. I think that's what it really boils down to. They would like the director to be required to accept a different kind of evidentiary document than- Well, it would be the same kind. It would just omit one word, right? It would still be a certification from a licensed physician saying that this individual has changed their sex from one to the other. So it would be the same form of document now. Yes, Your Honor. And I think if, you know, Arizona wanted to make that policy determination, it probably could. I think the question is whether it's constitutionally required to make that policy determination. And I don't think that that's the case here because Arizona law provides the path under A4 for somebody who has not- So do you think it is appropriate for us to certify that question to get clarity on that issue? Your Honor, we don't think that certification is necessary. This is not a new issue. This has been, you know, the director has been amending the sex marker on birth certificates pursuant to a court order without proof of a sex change operation for nine years. Now, we heard from the legislature that they don't agree with that position. This is the first- Well, we've heard from the speaker and the president that they don't agree with it. I have no idea what the legislature's position is. That's correct, Your Honor. So just so we're clear, you think, put constitutional questions aside, that we don't need to ask the Arizona Supreme Court whether A4 provides a remedy to those who haven't had a sex change operation because you believe it does? Yes, Your Honor, I think- And the other, the plaintiffs, I want to come to the other side because you guys have different positions on different issues. The plaintiffs agree that A4 does. Yes, Your Honor, I think this court has what it needs- Okay, what that means for an equal protection claim is a separate question. I'm just saying it's a matter of statutory interpretation. You think we should interpret the statute in accordance with the way you read it, and I take it the way the plaintiffs read it. Yes, Your Honor, and I don't think, I think the court has what it needs to do that statutory interpretation. I don't think you need to get into what is the scope of the Superior Court's authority. I don't think you need to definitively define that. And by the way, this is the first time- But there might be an as-applied challenge later if the Superior Court refused to accept certain things or if it made irrational decisions or something, right? And the Arizona court's upheld as a facial matter, you'd interpret the statute that way. Right, and because this is a facial challenge and they've conceded that this doesn't apply to the court order process, I think that defeats the facial challenge. And I think that the court can say that without guidance from the Arizona Supreme Court. I will note they've got 462 pending cases. Now, you argued Pullman abstention on this issue, right? That they should be litigating this issue separately through the Arizona courts. Yes, so we acknowledge that the district court in denying, or we argued that the district court in denying the motion to dismiss erred by not abstaining. I agree that that has probably less force now, that there's no longer an as-applied challenge, but we think that the court erred at that time. So when did the as-applied challenge get dropped in this case? So that was, I think, in 2022. It is at 4 Director ER 605 at note 4. The district court said, it was an order on a discovery dispute, a motion to compel. The district court said, the parties need to know if this is a facial challenge or an as-applied challenge. So to be clear, it's a facial challenge and there will be no as-applied challenge in the case. The director litigated the case accordingly after that time. I see that I'm over. I would ask, we still have our motion to stay pending. The remedy that the district court ordered is supposed to take effect on April 30th. We would ask the court to grant the motion to stay before that date. Thank you. Yes, we have two minutes on the clock, but really anything's going this morning. Well, I won't take the time of the court with any prepared remarks, but if the court has any questions after what the court has heard. I guess I, maybe I should have asked Mr. Aerosmith this question, but we didn't have an opportunity to talk about the remedy at all in your openings. And I'm curious to know sort of what, and I know you've made these arguments in your briefs, but what's the position of the speaker with respect to the broadening of A3 as the remedy versus striking the provision in its entirety? Well, yes, Your Honor, as we described in our brief, if these provisions or if A3 is found to be unconstitutional, we do believe that the remedy should be striking the entirety of A3 as it relates to amendments for sex change operations, rather than dramatically broadening the scope of a provision that was drafted as limited in a statute that for the other amendments are also quite limited. We think this remedy is dramatically broader than what the legislature intended when it enacted that provision. And I think as the court noted, the phrase sex change does not have a definite meaning. We addressed this in our briefing. And I think the plaintiffs came back with a case in Arizona, unpublished public case, uses the phrase sex change to show that it has a definite meaning. But if you track that down, the phrase sex change was referring to sex change operation, which the district court has indicated cannot be the meaning of that phrase here. One last question. I think it's very simple. I take it that all three parties here, I'm not asking you to speak for the other two. All three parties agree that sex change operation means any kind of operation, not a specific kind of operation. I don't want to speak for anyone else, but I do agree with the way Mr. Arrowsmith characterized it. I think Mr. Arrowsmith agrees with the plaintiffs on this too. They're not arguing that it's limited to above the waist or below the waist. So as to that, that's not an issue that it seems to me we'd have to ask the Arizona Supreme Court about under any circumstance. There seems to be no contest about that. I believe that's correct, Your Honor. Thank you, counsel. I want to thank all counsel today for argument and what I think is a difficult case. And your argument today have been very helpful. So thank you very much. That case is now submitted and will be in recess.
judges: GRABER, HURWITZ, DESAI